Glen T. Jonas
CA State Bar No.: 166038
Law Firm of Jonas & Driscoll, L.L.P.
555 West Fifth St.,
Thirty-First Floor
Los Angeles, California 90013
Telephone:(213) 683-2033

Attorney for Defendant MICHAEL GARDINER (*Pro Hac Vice*)

Jonathan Powell
Nevada Bar No. 009153
PATTI & SGRO, LTD.
720 s. 7th St. Suite 300
Las Vegas, NV 89101
Telephone: (702)385-9595

Designated Local Attorney for Defendant
MICHAEL GARDINER

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. CR-S-04-0084-RCJ (RJJ) |
| | ) |
| | ) **DEFENDANT'S SENTENCING** |
| Plaintiff, | ) **MEMORANDUM AND OBJECTIONS** |
| | ) |
| vs. | ) |
| | ) |
| DIANA LEE FLAHERTY and | ) |
| MICHAEL GARDINER, | ) |
| Defendant. | ) |
| _____ | ) |

**TO THE HONORABLE ROBERT C. JONES, PARTIES AND COUNSEL:**

Defendant MICHAEL GARDINER through counsel, hereby submits DEFENDANT'S SENTENCING MEMORANDUM AND OBJECTIONS. Defendant

-1-

reserves the right to file a supplemental sentencing memorandum if new evidence or issues arise prior to sentencing.

Defendant also requests the opportunity to make additional comments through counsel at the time of sentencing in this matter.

DATED: <u>May 14, 2007</u>          Respectfully submitted,

/s/
_____
GLEN T. JONAS
Attorney for Defendant

/s/
_____
JOHN POWELL
Local Counel for Defendant

1 **SENTENCING MEMORANDUM**

## I.   INTRODUCTION

MICHAEL GARDINER became involved with PHOENIX METALS as an investor in late 1999. Mr. GARDINER, not unlike the victims that came before him, relied on representations made to him by ROBERT F. FLAHERTY and DIANA LEE FLAHERTY in purchasing shares of Phoenix Metals stock.  Mr. Gardiner was so impressed with the FLATERTY's pitch he began consulting on behalf of Phoenix Metals in an effort to raise capital. Mr. GARDINER accepted the FLAHERTY's representations at face value, but over time, came to learn that he had been deceived.  The nature of the fraud was that Phoenix Metals had proprietary ownership of a process to extract gold from volcanic cinders from sites owned or leased by Phoenix Metals.  In truth, the "process" was not economically feasible and produced only trace amounts of gold.  Mr. GARDINER, assisted in power point presentations and networking in the effort to raise capital.

Mr. GARDINDER, was initially victimized and deceived by the FLAHERTYS.  By September 2001, he had discovered the truth and took part in a presentation regarding potential sale of securities to an undercover FBI agent during the period of November 2001 through January 2002. No loss occurred from those actions.

As noted by the Government, Mr. GARDINER was not privy to

-3-

1  the full history of the scheme nor its various incarnations. He
2  was slow to recognize that the gold-from-cinders enterprise was a
3  sham, due to the elaborate nature of the scheme.  For most of his
4  involvement with Phoenix Metals, Mr. GARDINER not unlike other
5  victims, clung to the alchemists dream.
6      By the time Mr. GARDINER discovered the truth, he simply
7  lied to himself.  He had invested not only his money, but his
8  time, energy and professional reputation.  It seemed easier to
9  "continue on" rather than admit the truth and reverse course.
10 Unfortunately, that decision led to his involvement in the sting
11 which brings him before the court.  The context of his actions
12 does not excuse his criminal conduct, but it does provide insight
13 relevant to various sentencing decisions.
14     Mr. GARDINER wishes to express his remorse and deep regret
15 for all who fell victim to the gold-from-cinders scheme. Mr.
16 GARDINER is well aware not only of the financial impact this
17 scheme had on victims, but also the emotional impact and self
18 doubt it caused the victims.
19     Mr. GARDINER, in an effort to make amends, accepted
20 responsibility for his actions early.  Additionally, he agreed to
21 cooperate with the government and provided testimony at trial
22 which helped secure the conviction of co-defendant DIANA LEE
23 FLAHERTY.
24
25
26
27
28                              -4-

**II. OBJECTIONS**[1]

1. PAGES 5-19 of the Pre-Sentence Report (PSR) directly states (Paragraphs 11, 13, 18, 26, 71) and otherwise implies Michael Gardiner devised the scheme along with the FLAHERTYS since its inception in 1993.

    <u>Objection</u>: As recognized in the plea agreement and the Government's Downward Departure Motion, Mr. GARDINER didn't have any involvement with PHOENIX METALS until late 1999. (Page 6 Plea Agreement "PA")(Page 3 of Downward Departure Motion "DDM".) Additionally, Mr. GARDINER, was duped by the FLATHERTYS and did not come to know the true nature of the their scheme until in or about September 2001. (Page 10 PA) (Page 4 DDM)

2. Paragraph #93 of the PSR states that Mr. GARDINER helped manage the mill site and supervise others at the purported refinery.

    <u>Objection</u>: Mr. GARDINER did not manage a mill site, he did not supervise others, he was not an employee, he was not on the payroll.  He consulted for Phoenix Metals assisting in raising capital for the company.

---

[1] Counsel recognizes that all objections were to be served within 14 days of receipt of the PSR. Counsel believes that the factual objections are supported by the plea agreement and the downward departure motion.

-5-

3. Paragraph #100 of the PSR states Mr. GARDINER was issued 300,000 shares of common stock in November 30, 1999.
   <u>Clarification</u>: Mr. GARDINER paid $90,000 for those shares at a discounted price as compensation for his services.

4. Paragraph 115 of the PSR indicates DIANA LEE FLAHERTY and MICHAEL GARDINER were designated as an attorney in fact transferring funds out of a straw buyer's account used to buy a home for the FLAHERTY'S in Las Vegas.
   <u>Objection</u>: Mr. GARDINER was not on any such account and did not act as an agent or attorney in fact for the subject house, to his knowledge.

5. Page 34 of the PSR recommends restitution in the amount of $120,000 with no specific factual support.
   <u>Objection</u>: Restitution is based on actual loss not intended loss. The loss calculation of $70,000 - $120,000 for the guideline analysis was intended loss. Mr. GARDINER should only be held accountable for actual losses incurred during his knowing participation in the scheme. His knowing participation was only 4 months and it appears that it did not lead to an actual loss.

5. Page 35 recommends drug testing for Mr. Gardiner.
   <u>Objection</u>: Mr. GARDINER requests a finding that he is a

|    |    |
|----|----|
| 1  | low risk for substance abuse. Mr. GARDINER asks to be |
| 2  | relieved of the drug testing condition pursuant to 18 |
| 3  | U.S.C. §3583(d). Mr. GARDINER will be asking for the |
| 4  | ability to travel internationally with a request to |
| 5  | relocate to Hong Kong.  Mandatory drug testing would |
| 6  | make this impossible. |

**III. SENTENCING**

    **A. GUIDELINE RANGE**

In issuing the appropriate sentence the court must consider the sentencing factors enumerated in Title 18 U.S.C. Section 3553(a)(2).  These factors include seriousness of the offense, promoting respect for the law, just punishment, deterrence, protecting the public from further crimes and providing the defendant with any medical care or educational/vocational training needed.

The plea agreement and pre-sentence report (PSR) calculate a guideline range of a Level 12, Criminal History Category I, with a sentencing range of 10-16 months, with a period of supervised release for a period of 3 years.  Based on the guideline calculations, *prior* to assessment of the defendant's cooperation in testifying against the co-defendant, the PSR recommends a sentence of 14 months. [2]

---

[2]     The PSR was prepared July 14, 2006, approximately 7 months before the Government filed the downward departure motion.

1       The Government filed a motion for "Downward Departure" on
2 February 28, 2007, recommending a 4 Level departure to **Level 8.**
3 Such a departure would reduce the advisory guideline range of
4 imprisonment to **0-6 months,** placing defendant in **Zone A,** thereby
5 making him eligible for a full term of **probation**.
6       In support of the Downward Departure, the Government cited
7 the following:
8       1.    Mr. GARDINER's testimony was balanced and credible;
9       2.    Mr. GARDINER's testimony was instrumental in
10            demonstrating there was no doubt co-defendant FLAHERTY
11            actively managed and controlled Phoenix Metals;
12       3.    Mr. GARDINER recounted representations made by co-
13            defendant FLAHERTY which underscored her deliberate and
14            knowing participation in the fraudulent scheme; and
15       4.    Mr. GARDINER'S testimony regarding the seemingly
16            mundane operations of Phoenix Metals provided valuable
17            context regarding the representations and activities of
18            Robert Flaherty and co-defendant FLAHERTY.
19
20       The Government accurately assessed the defendant's
21 cooperation and concluded that his information, efforts and
22 testimony amounted to substantial assistance in the investigation
23 warranting the requested 4 Level downward departure.

**B. CONFINEMENT CONSIDERATIONS**

The defendant does not seek to excuse his conduct. Nevertheless to sentence the defendant fairly, the conduct must be placed in its correct context. The Government acknowledges in Fn. 1 of its Motion for Downward Departure, that Mr. GARDINER was deceived. He was duped by the FLAHERTYS' "gold-from-cinders" scheme, the same as the other victims. However, unlike the other victims, he didn't simply invest his money, he also invested his time, energy, career and reputation trying to help the company succeed. Before learning that he had been duped, Mr. GARDINDER devoted his time as a consultant, in an effort to help Phoenix metals. The scam was sophisticated and detailed, which is why it survived for approximately 10 years.

Having invested his own money; the money of his family; the money of his friends; when he learned he had been duped, he tried to convince himself otherwise and carry on. That decision cost him everything. Before Phoenix Metals, he was a successful, respected and trusted businessman. Now, he is a convicted felon, struggling to make a living. He is full of regret. He is full of remorse. That regret is not reserved for himself, it is for all the victims made to feel foolish.

Mr. GARDINER regrets that he didn't have the strength of character to stop lying to himself about the reality of the "gold-from-cinders" scam. However, he is not alone. As acknowledge by the government, several investors still cling to

-9-

the "alchemists dream - that they posses a secret technology capable of producing gold and other precious metals from cinders."  The nature of the scam is such that the very people duped by it, will be slow to abandon the dream.

Most victims of this con can simply lie to themselves once they know better and "continue on" with no further implications. For Mr. Gardiner it was different: having been duped by the FLAHERTYS, he was not only investing but also consulting for the company; By denying reality once it was known to him, "continuing on" meant that he was engaging in criminal conduct. This is the context of his criminal conduct.

Pursuant to 18 §3552(a) The court is to impose a sentence that is "<u>sufficient but not greater than necessary</u>" to meet the goals of punishment. The sting of a felony conviction, the humiliation, embarrassment and continued disgrace has unfortunately tarnished his reputation.  Due to the nature of the conviction there is no second chance for Mr. GARDINER. The worst he has had to suffer will continue for the rest of his life.

Provided the Court grants the Motion for Downward Departure, the defendant would score at a Level 8, in Zone A, 0-6 months qualifying the defendant for probation.

The goals of deterrence, punishment and protecting the public are met through placement of the defendant on probation. While on probation his conduct is limited and monitored. In consideration of the context of criminal act, and in accordance with the sentencing factors, Mr. GARDINER respectfully requests a

-10-

sentence at the bottom of the sentencing range at **0 months.**

### C. FINE

Page 34 of the PSR, waives the fine in anticipation of a large amount of restitution.

### D. RESTITUTION

Pursuant to page 12 of the plea agreement, the matter of restitution was left open to be determined by the court. The parties stipulated to a loss amount between $70,000 and $120,000 for guideline calculations.

The PSR recommends restitution of $120,000 with no supporting documents or facts. The overall loss during the entire course of the scheme is estimated to be $5,775,000 (Paragraph 116 of PSR).

It is agreed by both parties that Mr. GARDINER relied in good faith on the representations of the FLAHERTYS. His recognition that he was duped commenced in or about September 2001 continuing through January 2002. A period of only 4 months. In accordance with the spirit of the plea agreement, equity would require that Mr. GARDINER only be held accountable for losses incurred during his knowing participation in the scheme.

For *Sentencing Guidelines purposes*, the term "loss" is defined as the greater of either the actual or intended amount loss due to defendant's fraud. For *restitution purposes* the statute (18 U.S.C. §3663) implicitly requires that the

-11-

1  restitution award be based on amount of loss <u>actually</u> caused by
2  defendant's offense. *U.S. v. Rhodes*, 330 F.3d 949 (7th Cir.
3  2003). The acts which constitute the gravamen of the indictment
4  against GARDINER, occurred when he solicited investment from an
5  undercover FBI agent. There was no loss as a result of those
6  acts.
7  The defendant respectfully requests that the restitution
8  amount ordered by this court, be made within the contemplated
9  spirit of the plea agreement . . . actual losses incurred due to
10 Mr. GARDINER'S actions supported by evidence. To date, we know of
11 none. Page 22 of the PSR detailing the supporting facts of that
12 time period, contains no allegations of actual loss.

**E. THE DEFENDANT REQUESTS A FINDING THAT HE IS A LOW RISK FOR FUTURE SUBSTANCE ABUSE.**

16 Paragraph 147 of the PSR indicates that the defendant
17 verified that he only experimented with drugs in high school.
18 None since. He is now 48 years old.
19 Pursuant to Section 3583(d) the drug testing condition of
20 supervised release may be ameliorated or suspended by the court
21 for any individual defendant if the defendant's presentence
22 report or other reliable information indicates a low risk of
23 future substance abuse by the defendant.
24 Therefore the defendant requests that the court find that
25 the defendant is a low risk for future substance abuse and
26 relieve the defendant of the drug test condition

**F.   DEFENDANT IS PERMANENT RESIDENT OF HONG KONG**

The defendant respectfully requests the ability to travel internationally while on probation/supervised.  The defendant's employment and residence was substantially in Asia for 20 years. The defendant is currently working in Hong Kong and wishes the ability to relocate on the condition that he checks in with probation periodically.

**IV. CONCLUSION**

In accordance with the defendant's substantial assistance, and the context of his acts, a 4 level downward departure to a Level 8, with a sentence of 0 months confinement with community service and/or other penalties meets the goals of punishment, deterrence and rehabilitation.

DATED: May 14, 2007            Respectfully submitted,

                                          /s/
                               _____
                               Glen T. Jonas
                               Attorney for Defendant

                                          /s/
                               _____
                               Jonathan Powell
                               Local Counsel for Defendant

-13-

**CERTIFICATE OF SERVICE**

I Glen T. Jonas, have been accepted by the United States District Court, Las Vegas, Nevada, to represent the defendant in this matter Pro Hac Vice. I am registered with CM/ECF. All parties will be served electronically upon filing of this document with the court.

Dated: May 14, 2007

/s/
_____
Glen T. Jonas

-14-

**PROOF OF SERVICE**

I,_____, certify:

I am an employee of Process Servers Inc located at 216 South 7th Street, Suite 2, Las Vegas, Nevada, 89101. On the date of _____,    I personally served the attached DEFENDANT'S SENTENCING MEMORANDUM AND OBJECTIONS in the matter U.S.A. v. MICHAEL GARDINER in Case No. CR-S-04-084- RCJ (RJJ)on the following:

United States Probation Office
Attn:  Felipe Ortiz
300 Las Vegas Blvd. South, Suite 1200
Las Vegas, Nevada 89101


I declare under penalty of perjury under the laws of the United States hat the foregoing is true and correct.

DATED: _____

_____
Process Servers, Inc.